UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ALPHA CAPITAL ANSTALT,

       Plaintiff,

– against –

REAL GOODS SOLAR, INC. and
ROTH CAPITAL PARTNERS, LLC,

       Defendants.

----------------------------------------------------------------x

17-cv-1186

**COMPLAINT**

Plaintiff Alpha Capital Anstalt ("Alpha Capital") ("Plaintiff"), by its undersigned counsel, for its complaint as against defendants Real Goods Solar, Inc. ("Real Goods," "RGSE" or the "Company") and Roth Capital Partners ("Roth Capital") (collectively, with, RGSE, the "Defendants"), states as follows:

## PARTIES

1. Plaintiff Alpha Capital is an entity organized under the laws of Lichtenstein with an address at Lettstrasse 32, 9490, Vaduz, Liechtenstein.

2. Upon information and belief, defendant Real Goods is a corporation organized and existing under the laws of the State of Colorado with offices located at 110 16th Street, 3rd Floor, Denver, CO 80202, whose shares of common stock trade under the symbol "RGSE" on the NASDAQ Capital Market.  Real Goods describes itself as a "residential and small commercial solar energy engineering, procurement and construction firm."

3. Upon information and belief, defendant Roth Capital is a corporation organized and existing under the laws of the State of Delaware that provides investment banking services and has its principal place of business located at 888 San Clemente Drive, Suite 400, Newport

Beach, CA 92660.

## JURISDICTION AND VENUE

4. Plaintiff's claims arise under Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, Section 11 and Section 12 of the Securities Act of 1933 (the "Securities Act"), and contract and common law.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action occurred in this District. In addition, the Securities Purchase Agreement, dated February 6, 2017 (the "SPA"), entered into between Plaintiff and RGSE contains a forum selection clause that states that all "legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement and any other Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, partners, members, employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York."

## STATEMENT OF FACTS

7. On January 26, 2017, Real Goods issued a press release announcing a public offering of its Class A common stock, Series K warrants to purchase Class A common stock, and Series L Warrants to purchase Class A common stock (the "First Offering").

8. On February 2, 2017, Real Goods filed a prospectus supplement (the "Prospectus Supplement") with the Securities and Exchange Commission ("SEC") describing the terms of the First Offering and adding to, or updating, the information contained in the RGSE "shelf" registration statement on Form S-3 filed declared effective by the SEC on February 10, 2014 (the "Registration Statement"). According to the Company, the Prospectus Supplement and the

Prospectus (collectively, the "Prospectus") are part of the Registration Statement.

9. In the Prospectus Supplement, Real Goods disclosed that it was seeking to raise aggregate investments of $11,500,000 in an offering of the sale of its securities (the "RGSE Securities"). The Units being offered ("Primary Units" and "Alternative Units") consisted of shares of RGSE common stock ("Common Stock") and warrants (Series K and Series L) to purchase RGSE Common Stock.

10. In a filing with the SEC on Form 8-K, dated February 2, 2017, Real Goods announced that, in connection with the First Offering, on February 1, 2017, the Company had entered into a [Securities] Purchase Agreement (the "SPA") with 15 institutional and accredited investors (the "Institutional Investors") and sold $6,314,453 Primary Units and $4,984,416 Alternative Units.

11. Alpha was one of the 15 Institutional Investors that, on February 1, 2017, entered into the SPA with RGSE and invested in RGSE Securities as part of the First Offering. Specifically, Alpha invested approximately $1.1 million to purchase RGSE Securities (145,162 shares of Common Stock, 355,000 Series K Warrants and 209,838 Series L Warrants).

12. The Prospectus Supplement for the First Offering filed with the SEC priced each Primary Unit of the First Offering (one Share of Common stock and one Series K Warrant to purchase one share of Common Stock) at $3.10 and each Alternative Unit of the First Offering (one Series L Warrant to purchase one share of Common stock and one Series K warrant to purchase one share of Common Stock) at $3.09.

13. On February 6, 2017, Alpha, along with 14 other Institutional Investors, closed on the purchase of Units of RGSE Securities issued in the First Offering.

14. The Prospectus for the First Offering contained numerous risk disclosures, including a statement by RGSE that the Company "may issue additional shares of our Common

3

Stock or instruments convertible or exercisable into our Common Stock . . . and thereby materially and adversely affect the market price of our Common Stock, and, in turn, the market value of the Series K warrants and Series L Warrants."

15. In addition, in connection with the risk disclosure in the Prospectus Supplement regarding such future issuance of shares and warrants, Real Goods stated: "We cannot predict the size of future issuances or the effect, if any, that they may have on the market price for our Common Stock."

16. In addition to the Prospectus, the SPA itself addressed future issuances of securities by Real Goods. Indeed, as noted by Real Goods in the Prospectus Supplement, the "terms of the [SPA] limit[ed] the Company's ability to issue securities in the future."

17. Specifically, the SPAs executed in connection with the First Offering prohibited RGSE, for a period of 90 days after the closing of the First Offering, from issuing, entering into any agreement to issue or announce or proposed issuance of any shares of common stock or any security which would entitle the holder to acquire at any time shares of Common Stock (the "90-Day Prohibition").

18. The SPA also provided that "[n]o provision of this Agreement may be waived, modified, supplemented or amended except in a written instrument signed by the Company and Purchasers which purchased (or prior to the Closing Date, agreed to purchase) at least 50.1% in interest of the Shares based on the initial Subscription Amounts hereunder, provided that if any amendment, modification or waiver disproportionately and adversely impacts a Purchaser (or group of Purchasers), the consent of such disproportionately impacted Purchaser (or group of Purchasers) shall also be required."

19. Finally, Section 4.14 of the SPA ("Equal Treatment of Purchaser") provided: "No consideration (including any modification of any Transaction Document) shall be offered or paid

to any Person to amend or consent to a waiver or modification of any provision of the Transaction Documents unless the same consideration is also offered to all of the parties to such Transaction Documents."

20. Roth Capital Partners, LLC ("Roth Capital") acted as the exclusive placement agent for RGSE in connection with the First Offering and received a cash fee of $803,941 for its services (7% of the gross proceeds received by the Company from the First Offering) and a warrant to purchase 185,000 shares of RGSE Common Stock.

21. Unbeknownst to Plaintiff, however, at or about the same time that it was closing on the First Offering, RGSE, notwithstanding the 90-Day Prohibition in the freshly signed SPA, was preparing a new offering of RGSE Securities.

22. Indeed, before the ink was even dry on the SPA for the First Offering, on the morning of February 8, 2017, RGSE filed a Form 8-K with the SEC disclosing that on February 7, 2017, the day after the Closing on the First Offering, Real Goods had priced a new registered offering to raise, at a 20% discount to the pricing in the First Offering, an additional $6 million from eight Institutional Investors (the "Second Offering").

23. According to RGSE's filings with the SEC, the Second Offering involved the sale of Primary Units, each consisting of one share of Common Stock and a Series M Warrant to purchase 75% of one share of Common Stock, and Alternative Units, each consisting of one prepaid Series N Warrant to purchase one share of Common Stock and a Series M Warrant to purchase 75% of one share of Common Stock.

24. The Form 8-K, dated February 8, 2017, filed by RGSE with the SEC, disclosed that the purchase price for a Primary Unit in the Second Offering was $2.50 and that the purchase price for an Alternative Unit was $2.49 per unit. Other than the price of the Units, the terms of the Second Offering were identical to those in the First Offering.

25. Roth Capital acted as exclusive placement for the Second Offering and received cash fee of $419,475 for its services and a warrant to purchase 120,000 shares of RGSE Common Stock.

26. The Second Offering closed on February 9, 2017.

27. On February 7, 2017, prior to the announcement of the Second Offering, the market price of RGSE Common Stock rose to $3.64 before closing at $2.85 per share. After the announcement of the Second Offering on February 8, 2017, the price of RGSE stock, in reaction to the news of the Second Offering, plummeted to close at a price of $2.18 per share.

## COUNT I
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### [15 U.S.C. § 78j(b)]
### (Against Defendant Real Goods)

28. Plaintiff realleges the allegations set forth in paragraphs 1 through 27 as if set forth fully herein.

29. In connection with the First Offering, RGSE made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to and did deceive Plaintiff as alleged herein; artificially inflate and maintain the market price of RGSE Securities, and cause Plaintiff to purchase RGSE Securities at artificially inflated prices.

30. In furtherance of the above-referenced conduct, RGSE made statements in the Prospectus that were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about RGSE's intentions with respect to the sale of its securities.

31. Specifically, in the Prospectus, RGSE falsely represented to Plaintiff that, as of the Closing of the First Offering on February 6, 2017, it "cannot predict the size of future issuances or the effect, if any, that they may have on the market price for our Common Stock." Such a statement was false and misleading given that, as of February 6, 2017, RGSE knew or should have known that, the very next day, it would be pricing a new registered offering of its securities to raise an additional $6 million.

32. Plaintiff reasonably relied on such misrepresentations and omissions in the Prospectus in determining to purchase RGSE securities.

33. Had Plaintiff known that, within a day of the Closing, RGSE would be pricing a new registered offering to raise an additional $6 million, Plaintiff would not have purchased RGSE's securities in the First Offering.

34. The above-referenced conduct of defendant Real Goods constitutes a violation of Section 10 of the Exchange Act and Rule 10(b)(5) promulgated thereunder.

35. As a direct and proximate result of the above-referenced wrongful conduct of Real Goods, Plaintiff has suffered damages in an amount to be determined at trial.

### COUNT II
### Violation of Section 11 of the Securities Act of 1933
### [15 U.S.C. § 77k]
### (Against Defendant Real Goods)

36. Plaintiff realleges the allegations set forth in paragraphs 1 through 27 above as if set forth fully herein, except for any allegations of fraud, recklessness or intentional misconduct. As this cause of action is based expressly on claims of strict liability and/or negligence under the Securities Act, for purposes of this Count II, Plaintiff expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct, including but not limited to those allegations in paragraphs 28-35 and 51-59.

37. Plaintiff acquired its RGSE Securities pursuant to and/or traceable to, and in reliance on, the Registration Statement (which incorporated the Prospectus Supplement). RGSE is the issuer of the securities via the Registration Statement.

38. Defendant Real Goods owed to the purchasers of the RGSE Securities obtained via the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

39. Defendant RGSE did not make a reasonable investigation or possess reasonable grounds for the belief that the statement it made in the Registration Statement that it "cannot predict the size of future issuances [of RGSE Securities]" was true or that there was no omission of material facts necessary to make the statement made therein not misleading.

40. Real Goods issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public that were contained in the Registration Statement, which misstated or failed to disclose, the Company's intentions with respect to the sale of additional securities. By reason of the conduct alleged herein, RGSE violated Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

41. Real Goods is the issuer of the stock sold via the Registration Statement. As the issuer, the Company is strictly liable to Plaintiff for the material misstatements and omissions therein.

42. At the time they purchased RGSE Securities, Plaintiff did so without knowledge of the true facts concerning the misstatements and omissions alleged herein.

43. By virtue of the foregoing, Plaintiff is entitled to damages under Section 11 of

the Securities Act from Defendant Real Goods.

## COUNT III
### Violation of Section 12(a)(2) of the Securities Act of 1933
### [15 U.S.C. § 77l(a)(2)]
### (Against Defendants Real Goods and Roth Capital)

44.     Plaintiff realleges the allegations set forth in paragraphs 1 through 27 above as if set forth fully herein, except for any allegations of fraud, recklessness or intentional misconduct.  As this cause of action is  based expressly on claims of strict liability and/or negligence under the Securities Act, for purposes of this Count III, Plaintiff expressly disclaims and excludes any allegations that could be construed  as alleging fraud or intentional or reckless misconduct, including but not limited to those allegations in paragraphs 28-35 and 51-59.

45.     Pursuant to the Prospectus, defendant Real Goods was the seller of the Real Goods Securities in connection with the First Offering.

46.     Defendant Roth Capital, as the placement agent, for the First Offering, actively solicited Plaintiff and offered to it the sale of the Real Goods Securities purchased in the First Offering.  In offering the Real Goods Securities, Roth Capital was motivated to serve its own financial interests.  Indeed, as detailed above, Roth Capital was compensated handsomely for its role as the Placement Agent for both the First Offering and the Second Offering.

47.     As detailed above, the Prospectus contained untrue statements of material facts, omitted to state other  facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts regarding the Company's intentions with respect to the sale of additional securities. The actions of solicitation by Defendants Real Goods and Roth Capital include, but are not limited to,  participating in the preparation of the false and misleading Prospectus and actively soliciting investments by Plaintiff in RGSE.

48.     Defendants Real Goods and Roth Capital owed to the purchasers of Real Goods

Securities sold in the First Offering the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants Real Goods and Roth Capital knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Prospectus as set forth above.

49. Plaintiff purchased Real Goods Securities pursuant to and traceable to the defective Prospectus. Plaintiff did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions.

50. By reason of the conduct alleged herein, Defendant Real Goods and Roth Capital violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff has the right to seek damages and/or rescind and recover the consideration paid for its Real Goods Securities.

## COUNT IV
## Common Law Fraud
## (Against Defendant Real Goods)

51. Plaintiff realleges the allegations set forth in paragraphs 1 through 27 above as if set forth fully herein.

52. As detailed above, to induce the purchase by Plaintiff of Real Goods Securities in connection with the First Offering, Real Goods engaged in a scheme, pursuant to which it knowingly or recklessly engaged in acts which operated as a fraud and deceit upon Plaintiff, made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53. Plaintiff reasonably relied on the fraudulent misrepresentations and omissions of Defendant Real Goods contained in the Prospectus in determining to purchase Real Goods

Securities.

54. As a direct and proximate result of the fraud of Defendant Real Goods, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT V
### Aiding and Abetting Common Law Fraud
### (Against Defendant Roth Capital)

55. Plaintiff realleges the allegations set forth in paragraphs 1 through 27 above as if set forth fully herein.

56. As detailed above, defendant Real Goods fraudulently induced Plaintiff to purchase RGSE Securities in the First Offering by disseminating a false and misleading Prospectus.

57. As the Placement Agent for both the First Offering and the Second Offering, defendant Roth Capital knew or should have known that the Prospectus with respect to the First Offering was false and misleading given that Roth Capital knew, at the time of the Closing of the First Offering, on February 6, 2017, that Real Goods would be pricing a new offering to sell securities the very next day.  Indeed, upon information and belief, Roth Capital orchestrated and encouraged the Second Offering.

58. By acting as the Placement Agent for Real Goods with respect to both the First Offering and the Second Offering, and, in connection therewith, introducing Plaintiff to Real Goods and acting as an intermediary between them, Roth Capital substantially assisted Real Goods in perpetrating a fraud on Plaintiff.

59. As a direct and proximate result of the actions of Roth Capital in aiding and abetting the fraud of defendant Real Goods, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT VI
## Breach of Contract (SPA)
## (Against Defendant Real Goods)

60. Plaintiff realleges the allegations set forth in paragraphs 1 through 27 above as if set forth fully herein.

61. The SPA is a binding contract between Real Goods and Plaintiff.

62. The SPA prohibited Real Goods, for a period of 90 days after the closing of the First Offering, from issuing, entering into any agreement to issue or announce or proposed issuance of any shares of common stock or any security which would entitle the holder to acquire at any time shares of RGSE Common Stock.

63. Notwithstanding the 90-day Prohibition, in breach of the SPA, Real Goods contracted to sell $6 million in additional securities the day after the Closing of the First Offering.

64. Plaintiff has not received any notice of any amendment to the SPA that would have excused Real Good's obligation to comply with the 90-Day Prohibition. Nor has Real Goods disclosed any amendment of the SPA in the First Offering to the SEC.

65. To the extent Real Goods asserts in the future to have properly amended the SPA to remove the 90-Day Prohibition (without the knowledge, let alone the consent, of Plaintiff), any such purported amendment would be null and void.

66. As the result of the breach by Real Goods of the SPA, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands that this Court enter judgment in their favor awarding them as follows:

A.  On Count I, awarding damages in favor of Plaintiff for all damages sustained as a result of the wrongdoing of defendant Real Goods, in an amount to be proven at trial, including interest thereon;

B.  On Count II, awarding damages in favor of Plaintiff for all damages sustained as a result of the wrongdoing of defendant Real Goods, in an amount to be proven at trial, including interest thereon;

C.  On Count III, awarding damages, jointly and severally, or a rescissionary remedy, in favor of Plaintiff for all damages sustained as a result of the wrongdoing of defendant Real Goods and defendant Roth Capital, wrongdoing, in an amount to be proven at trial, including interest thereon;

D.  On Count IV, awarding damages in favor of Plaintiff for all damages sustained as a result of the wrongdoing of defendant Real Goods, in an amount to be proven at trial, including interest thereon;

E.  On Count V, awarding damages in favor of Plaintiff for all damages sustained as a result of the wrongdoing of defendant Roth Capital, in an amount to be proven at trial, including interest thereon;

F.  On Count VI, awarding damages in favor of Plaintiff for all damages sustained as a result of the wrongdoing of defendant Real Goods, in an amount to be proven at trial, including interest thereon;

G.  Awarding Plaintiff prejudgment and post- judgment interest, as well as its reasonable attorneys' fees, expert fees and other costs (as per Section 5.9 of the SPA); and

H.  Awarding such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated:   New York, New York
         February 16, 2017

HOFFNER PLLC

By: */s/David S. Hoffner*
    David S. Hoffner
    hoffner@hoffnerpllc.com
    800 Third Avenue, 13th Floor
    New York, NY 10022
    Tel.: (212) 471.6203
    Fax: (212) 935.1166
    *Attorneys for Plaintiff*
    *Alpha Capital Anstalt*

Of Counsel
Grushko & Mittman, P.C.
Valley Stream, NY